UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

       -v.-                                                          ORDER

HECTOR VALENTINE,                             11-CR-626-1 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Hector Valentine's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (Doc. 100), and the Government's opposition thereto, (Doc. 103).

      On August 10, 2012, Defendant was sentenced principally to 210 months' imprisonment. (Doc. 54.)  That sentence was well below the advisory Sentencing Guidelines range of 262-328 months.  (Presentence Report ("PSR") ¶ 78.)  He has served approximately 114 months.

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action and it is consistent with the relevant policy statements of the Sentencing Commission.  Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community.  Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family

circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above. But – contrary to the Government's contention – "[n]either Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).[1] "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

The Government argues that Defendant has not exhausted his administrative remedies, because his application to the warden at FCI Allenwood Medium asked that he be considered for "early release/home confinement," and thus only sought relief under 18 U.S.C. § 3624(c), not 18 U.S.C. § 3582(c)(1)(A).[2] Had the application referred only to home confinement, I might agree, but Defendant did ask for early release, and in light of his unrepresented status, I will assume that that suffices for exhaustion under the latter statute.

Defendant argues that the dangers presented by the coronavirus pandemic in prison, combined with his medical conditions – specifically, high cholesterol, prediabetes, kidney failure, enlarged prostate, hyperthyroidism, hyperlipidemia, hypertension and obesity – put him at increased risk for a severe case should he develop COVID-19, and amount to an extraordinary and compelling reason. Of those ailments, only obesity appears on the list of conditions that the Centers for Disease Control ("CDC") has identified as causing increased risk for severe disease

---

[1] I expect the U.S. Attorney's Office to keep itself informed of new Second Circuit cases and not lead the Court astray by using outdated boilerplate.

[2] The Government also argues that Defendant's request to the warden "merely asks that the defendant 'be put in for *consideration* for early release/home confinement,'" and therefore is not a request to be released. (Doc. 103 at 5 (emphasis by the Government).) This argument – which, if not frivolous, is awfully close to frivolous – is beneath the U.S. Attorney's Office.

if one contracts COVID-19.  Hypertension and overweight are conditions that, according to the CDC, *might* be risk factors.  Defendant provides no evidence, apart from his say-so, that he suffers from any of the listed conditions, and his medical records (which the Government has provided) show nothing about several of them.  They also show that Defendant's blood pressure is normal and thus he does not suffer from hypertension.  Accordingly, only obesity/overweight may impact his susceptibility to a severe case of COVID-19.  While Defendant's body mass index ("BMI") was just over 30 in September 2020, it was under 28 in March and May of 2020.  It thus appears that if he is obese, he is barely so, and he became so during the pandemic.  Defendant's medical records reveal that concern over his unhealthy food choices.  He has also refused medications and vaccines, suggesting a disregard for his health.  Defendant could easily lose the small amount of weight necessary for him not to be considered obese, and may already have done so.  If he is obese, he is barely so, and more fairly construed he is overweight.  He thus has a condition that might or might not be a risk factor.  His institution is experiencing an outbreak (although fortunately no deaths have been reported), so I will assume for the sake of argument that this potential risk factor, in light of the impossibility of social distancing in a facility where the virus is present, amounts to an extraordinary and compelling reason.[3]

---

[3] Defendant also argues that if he were sentenced today, he would not be a career offender, and that that fact contributes to extraordinary and compelling circumstances.  As I have explained before:

> Petitioner's frustration – evidenced by his many post-conviction applications, (*see* Docs. 55, 62, 64, 66, 72, 74, 76, 79, 81, 84, 86, 93) – is understandable.  He may be right that the career offender designation would not apply if he were sentenced today.  But he obtained substantial benefits from the plea agreement.  For example, the law at the time would have allowed the Government to seek a mandatory life sentence for the instant offense – Petitioner's fourth drug felony, his guilt of which he does not contest – but in exchange for the plea and the Guidelines stipulations in the agreement, the Government agreed not to do so, or

I must still have to consider the § 3553(a) factors. They militate strongly against release less than 55% of the way into Defendant's already-well-below-Guidelines sentence. Defendant's offense involved between 280 and 840 grams of crack. He was on parole at the time he committed it. His co-conspirators apparently included his minor son. The instant conviction was Defendant's eighth, his sixth involving drugs, and his sixth felony. Two of his priors were for weapons possession. He was not an impulsive, immature youth at the time but a man of forty-four. To let Defendant out now would seriously several of the purposes of sentencing. It would not sufficiently address the seriousness of the offense, which involved a large quantity of crack and the use of minors, and the history and characteristics of the Defendant, including his record of recidivism (including returning to crime after significant sentences) and disrespect of the law. It would not be just punishment and would introduce unwarranted sentencing disparities. Perhaps most importantly, it would not suffice to protect the public from further crimes – unfortunately a likelihood given Defendant's long rap sheet. There is, sad to say, no reason to believe that this time around, Defendant would be any more law-abiding than he has been in the past. In short, the § 3553(a) factors outweigh the extraordinary and compelling circumstances .

---

> even seek the mandatory twenty-year term it could have sought for a second drug felony. It would not be fair for a defendant to obtain the benefits of a plea agreement, in part by voluntarily waiving his right to appeal or collaterally attack his sentence, and then seek to evade the waiver while retaining the benefits. *See United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (*per curiam*); *see also Roldan v. United States*, No. 96-CV-959, 1997 WL 214964, at *3 (S.D.N.Y. Apr. 25, 1997) ("[T]he plea bargaining process would be rendered meaningless were [the Court] to permit [Petitioner] to retain the profits of his guilty plea while declining to give the government the benefit of its bargain.").

(Doc. 94 at 5-6.)

For the reasons stated above, the motion is denied. The Clerk of Court is respectfully directed to terminate Doc. 100 and to send a copy of this Order to Hector Valentine, No. 65531-054, FCI Allenwood Medium, Federal Correctional Institution, P.O. Box 2000, White Deer, PA 17887.

Dated: December 29, 2020
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.